Southaed J.
dissented. This case comes up, upon objections to opinions delivered by myself, upon three questions, which arose at the trial. Upon the best view which I have been able to take of the case, and the argument delivered upon the rule, I still remain of the same opinion, which I expressed, upon all the points.
. *The suit was brought by Strong and Havens, against the sheriff, for neglecting to levy, make, and pay over, *927 the money due upon an execution, in their favour, against Jacob Kerr; and so far as the facts appeared, at the cir-’ cuit, and are necessary to a correct understanding of the points raised, they are as follows. Pour writs of fi. fa„ de bon. et ter., were regularly issued against Kerr, and came into the hands of the sheriffs, in the following order : one to sheriff Green; and one in favour of John Barnet, one in favour of Strong and Havens, and one in favour of John Armstrong, to sheriff IAnn. Regular levies were made and returned, upon all these writs. IAnn received from Kerr $450, and applied it to Barnet’s excution, which left something more than $200 due upon it. After this, at the request of Kerr, his real property was advertised by IAnn, and struck off, upon the bid of Barnet, for $2500, but he gave notice, that he had bid under a mistake, and should not abide by it. The sheriff exposed the land a second time, and sold it for $392.50; and discharged Barnet’s execution. He also exposed Kerr’s personal property, and sold it for $562.50. Armstrong was the purchaser, and gave an acknowledgment of the purchase, on the list of the articles, and a receipt for the amount, on his execution. It was of this payment of the money to Armstrong, that Strong and Havens complained, their execution being the oldest.
After the plaintiffs had rested, the defendant offered to prove, that after the sale of Kerr’s personal property, to Armstrong, and taking his acknowledgement and receipt, a ca. sa. was issued in favour of Strong and Havens, and Kerr taken, by the sheriff, but discharged, by their order, before he was confined ; and, after his discharge, the present suit was brought. This evidence, after argument, was overruled.
John Armstrong was offered as a witness, to prove, that at the sale of personal property, Green, who held the first execution, demanded that it should be first satisfied; and that he, supposing that the proceeds of the sale, would go to his execution, agreed to, and did pay Green, the amount of his claim, which was about $60. He was objected to, and declared by the court, to be an incompetent witness. Those facts were then all proved by E. Green, and the plaintiffs admitted, before the jury, that it was proper to *928 deduct the $60, out of the amount for which the goods sold', and for which they claimed a verdict. The defendant also, ^claimed allowance, for the amount of the costs, upon an action, by the sheriff, against Barnet, upon his bid at the first vendue of the real estate. It was agreed, by the parties, that after Barnet refused to take the land, at his bid, Kerr applied to the sheriff, to bring suit against him, and, with good security, entered into a bond, to indemnify him from any costs, which should, be created by the suit. The action was accordingly prosecuted, and verdict and judgment rendered, in favour of Barnet; and the attorney of the sheriff, declared, in the presence of the court and jury, that he relied upon the bond which had been given, was satisfied with it, and had no claim upon any one, for any costs in that action. Upon these facts, it was submitted whether these costs ought to be proved, and deducted from the balance; and the judge declared it as his opinion, that they ought not. There was verdict for the plaintiff, for the amount of the sales of personal property, after deducting what was paid to Green.
I will notice the three objections in their order. 1. There was error, in not directing the costs, of the suit of Linn v. Barnet, to be deducted.
I do not understand, that a sheriff is bound to bring suit and expend his own or the plaintiff’s money, in order to enforce every questionable bid, which may be made at sales of property, by him. Neither law, nor the interest of parties, requires it. He may refuse to sue, until an indemnity for the costs, &c., be given to him; and if he does so refuse, and takes a bond to indemnify him, I do not perceive by what right he can desert that bond, and claim the costs from another source. In this case, the defendant seems to have been aware, that the bid of Barnet could not be enforced, and he, therefore, refused to attempt to enforce it, until Kerr, the person whose property was sold, gave him security for the costs. Why then should these costs be taken out of the amount which was coming to the plaintiffs ? The suit was not brought at their request, but at the request of Kerr. The plaintiffs gave no promise of indemnity. Why should they pay for Kerr’s ' acts ? Besides, there were really no costs to come out of *929 the sum made by the sale of the property. The attorney of the plaintiff, in that suit, had looked to his bond, was satisfied with it, and acknowledged that no costs were due. How, then, was it possible that any should be deducted ?
2. As to Armstrong's interest. The plaintiffs Strong and Ha*vens, claim the amount of certain personal property, sold by the sheriff, and bought by Armstrong. At the foot of a schedule, or list, of the property, so sold, Armstrong signed an acknowledgement that he bought this property, and stated the sum given. This sum was endorsed on his execution, and he thus received the benefit of it. If he was not entitled to receive it; if it was paid to him by mistake ; it may certainly be recovered from him, upon the plainest legal principles. But the question, whether he was entitled to it? depends, altogether, upon the fact, whether Strong and Havens recovered in this action or not. If they were entitled to it, he was not; if they were not, he was. Their right to it was to be settled in this action, and to be more or less governed by this evidence. To me, therefore, the interest seems positive, direct, and immediate. If Strong and Havens recover, he must refund the money; and he may be compelled to do it, either upon the general principle of money received by mistake, or by force of the acknowledgement, at the foot of the articles bought.
But even if this were not so, I am not satisfied that a new trial should be granted. The facts, which he was offered to prove, were amply proved by the most unexceptionable evidence, afterwards, and defendant had the benefit of them.
3. As to the effect of the ca. sa. This ca. sa. was issued after the execution, which was the foundation of this suit; and after the default of the sheriff; and, also, after the sheriff had the money in his hands. Now, whatever may be the law, as to issuing a fieri facias, after the body has been taken under a ca. sa.; surely the issuing of a ca. sa. can neither divest out of the plaintiff, rights which are vested in him, nor save the previous liabilities of the defendant, and justify him, in keeping money, to which he had no right, but which he had made for another. If the *930 execution had given the plaintiffs a right to the money; • if the money were already legally theirs; however Rear might complain of the imprisonment of his body, that imprisonment would not restore to him his property. If the sheriff had subjected himself to prosecution; if he had the money in his hands, a ca. sa. never could relieve him from that prosecution, and authorize him to keep the money; especially when the ca. sa. was issued under a mistake, created by his conduct, in making an incorrect return, and paying the money to a wrong person. Besides, the money being due on the yim facias, of the plaintiffs, if he is not obliged to pay the *money to them, I know not who has a right to call on him for it. And, in this case, the plaintiffs seem to me, not chargeable with any intentional wrong to Kerr, in suing out the ca. sa. They were deceived by the sheriff, and discharged him as soon as they knew the course which the sheriff had taken, and that their money really had been made, out of defendant’s property.
I do not preceive, that this case can be affected by the fact, that Armstrong agreed to satisfy Qreeris execution. What he paid on that execution, was first to come out of the property sold; and was, therefore, properly credited by the plaintiff, in this suit; and, by that credit, it was restored to Armstrong ; for he was thus permitted to retain so much on his execution. And even if this were not so, the rights of the plaintiffs would not be altered. If a third person, either through friendship or interest, chose to satisfy a previous execution, it did not lessen the lien of their execution. It still bound and held the property, and the only effect of such a procedure would be, to free the property from previous liens, and leave it unincumbered for the satisfaction of this.
I, therefore, see no reason why the verdict should be set aside.
New trial granted.